UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SADOWSKI, CDCR #AC-3517,<br><br>                              Plaintiff,<br><br>vs.<br><br>MARVIN YANG, DR. DAVID CLAYTON,<br><br>                              Defendants. | Case No.: 25-CV-2008 TWR (BLM)<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS, (2) DENYING MOTIONS FOR APPOINTMENT OF COUNSEL AND PRODUCTION OF EVIDENCE, AND (3) DISMISSING COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**<br><br>(ECF Nos. 2, 9–11, 13) |

Plaintiff William Sadowski, a prisoner proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983,[1] (*see* ECF No. 1 ("Compl.")), along with a motion to proceed *in forma pauperis* ("IFP"). (*See* ECF No. 2 ("IFP Mot.").) In his Complaint, Sadowski alleges Defendants Drs. Marvin Yang and David Clayton violated his rights under the federal constitution and California state law by failing to provide the proper

---

[1] Although this case was initially filed in the United States District Court for the Eastern District of California, it was transferred this Court pursuant to 28 U.S.C. § 1406(a). (*See* ECF No. 5.)

physical therapy after he had a surgical procedure on his hip and by failing adequately to treat him after he fell and reinjured his hip. (*See* Compl. at 3–6.)

Plaintiff has also filed several motions, in which he seeks appointment of counsel and an order requiring the production of evidence, (*see* ECF Nos. 9–11, 13), as well as several supplemental documents, including letters and an affidavit, (*see* ECF Nos. 8, 12, 14–16). Having reviewed all the relevant filings, and for the reasons discussed below, the Court **GRANTS** Plaintiff's IFP Motion, **DENIES** Plaintiff's various motions for appointment of counsel and production of evidence, and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint for failure to state a claim.

## MOTION TO PROCEED IFP

Generally, parties instituting any civil action in a district court of the United States, must pay a filing fee of $405.[2] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1) & (4). Prisoners who proceed IFP must repay the entire fee in

---

[2] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Sadowski has provided a copy of his prison trust account statement. (*See* ECF No. 4.) During the six months prior to filing suit, Sadowski had an average monthly balance of $156.02 and average monthly deposits of $131.71, and at the time he filed suit he had an available account balance of $128.53. (*Id.* at 1–2.) Accordingly, the Court **GRANTS** Plaintiff's IFP Motion and **ASSESSES** an initial partial filing fee of **$31.20** pursuant to 28 U.S.C. § 1915(b)(1). *This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order is executed. See* 28 U.S.C. § 1915(b)(4). The agency having custody of Plaintiff **SHALL COLLECT AND FORWARD** payments to the Clerk in installment provisions until the $350 statutory fee is paid in full as set forth in 28 U.S.C. § 1915(b)(1).

### SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *see also Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

I.  **Plaintiff's Allegations**

Sadowski alleges that in June of 2024, he had a "minor surgical revision," during which "new cartilage" was implanted "into [his] right hip replacement." (Compl. at 3.) After the procedure, Sadowski was housed in the prison infirmary, where he received a "limited number of physical therapy sessions." (*Id.*) Sadowski was "discharged" from the infirmary at the end of June, at which time he was "walking OK, with or without a walker." (*Id.*)

On July 22, 2024, Plaintiff saw Dr. Yang for physical therapy session. (*Id.*) Dr. Yang had Sadowski do "advanced" physical therapy despite Sadowski's age (66 years old) and frailty. (*Id.*) Dr. Yang placed weights on Sadowski's ankle and had him perform exercise routines. (*Id.*) After the treatment, Plaintiff experienced "intense" and "excruciating" pain in his right leg. (*Id.*)

On July 29, 2024, Sadowski "reported" Dr. Yang's "inappropriate" and "negligent" physical therapy treatment to Dr. Clayton. (*Id.* at 4.) Sadowski had another session with Dr. Yang on July 30, 2024, during which Dr. Yang "made no mention of" the Transcutaneous Electrical Nerve Stimulation ("TENS") Unit, which could have reduced Sadowski's severe pain. (*Id.*)

On August 5, 2024, Plaintiff had an "accident" in the yard that was "caused by his medical instability, muscle weakness and severe pain in [his] right leg." (*Id.* at 3.) Specifically, Sadowski "fell back onto [his] buttocks" and landed on his right hip replacement. (*Id.*) Sadowski experienced "immediate" and "excruciating" pain after the fall. (*Id.*)

That same day, Dr. Clayton canceled Plaintiff's future physical therapy sessions "but did not order an x-ray."[3] (*Id.* at 6.) At some point, Dr. Clayton prescribed Nortriptyline

---

[3]  Exhibits attached to the complaint show that on August 6, 2024, Sadowski saw another physical therapist. (*Id.* at 13.) He told the therapist about his fall and that he had too much pain to participate in physical therapy. (*Id.*) Plaintiff also submitted requests for a wheelchair, which Dr. Clayton approved on August 9, 2024. (*Id.*)

4

25-CV-2008 TWR (BLM)

for pain, which "never worked very well." (*Id.* at 4.) Dr. Clayton approved Sadowski's request for a wheelchair on August 9, 2024.

Records indicate Sadowski saw a physical therapist again on August 29, 2024, during which Sadowski again stated that his previous physical therapy had been "too aggressive." (*Id.* at 15.) The report also notes that Plaintiff "walked" into the clinic using a walker had been given a "loaner" wheelchair for a "couple weeks."[4] (*Id.*)

On September 14, 2024, Sadowski appears to have submitted a request for healthcare services, in which he complained of continuing pain in his right hip and leg. (*Id.* at 17.) He also stated he felt "snapping" and "popping" around his hip. (*Id.*) On September 21, 2024, Sadowski submitted another health care services request, asking to see Dr. Clayton and suggesting he may need an x-ray or other imaging. (*Id.* at 18.) Plaintiff submitted a third request for services on September 24, 2024, again noting his "great pain" and expressing frustration that he had not received a response to his previous two requests. (*Id.* 18.)

On October 7, 2025, Plaintiff's hip was x-rayed. (*Id.* at 20–21.) The next day, Plaintiff learned the extent of his injury when Dr. Clayton viewed his x-ray and was "flabbergasted" to discover fractures to Plaintiff's pelvis and hip. (*Id.* at 4, 21.) Clayton's notes from that visit indicate Sadowski was scheduled for appointment with orthoepic surgery in two days. (*Id.* at 21.)

On October 10, 2024, Sadowski "went down" and was taken by ambulance to the "Crisis Treatment Center Infirmary." (*Id.* at 4.) While in the infirmary, Sadowski learned he had also contracted pneumonia and "infectious diarrhea" due to his inability to shower after his fall. (*Id.* at 4, 6.) It appears Sadowski's orthopedic appointment was delayed until he recovered from his illnesses.

---

[4] The same report notes the wheelchair was "returned" on August 28, 2024, after Plaintiff stated he was "able to walk better now." (Compl. at 15.)

## II. Analysis

Sadowski alleges Drs. Yang and Clayton violated his Eighth Amendment right to adequate medical care and his rights under California's Bane Act, Cal. Civ. Code § 52.1.[5] (Compl. at 3–6.) Plaintiff seeks monetary damages. (*Id.* at 7.)

### A. Eighth Amendment

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). A plaintiff must also allege facts to establish a causal link between the Defendants' conduct and an alleged injury. Without causation, there is no deprivation of a plaintiff's constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976).

The Eighth Amendment prohibits "cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment claim based on inadequate medical care, a prisoner must plausibly allege they had a "serious medical need," and the defendant was "deliberately indifferent" to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The test for deliberate indifference has objective and subjective components. To satisfy the objective prong, the plaintiff must show a "serious medical need, by establishing that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *Estelle*, 429 U.S. at 104).

---

[5] A district court may exercise supplemental jurisdiction over a claim based on state law, such as the Bane Act, when raised in a complaint pursuant to § 1983. *Chinaryan v. City of L.A.*, 113 F.4th 888, 897 (9th Cir. 2024) ("The district court had jurisdiction over plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their Bane Act claim pursuant to 28 U.S.C. § 1367."). A court, however, "may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (internal quotation marks omitted).

To satisfy the subjective prong, the plaintiff must allege the defendant's response to the need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm cause by the indifference." *Id.* Put another way, a plaintiff must show the official knew of and disregarded "excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "The official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that official "must also draw the inference." *Id*. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Deliberate indifference, however, "is a high legal standard." *Toguchi*, 391 F.3d at 1060. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.*; *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990 (stating "mere malpractice, or even gross negligence" is insufficient to establish an Eighth Amendment violation).

### 1.  Dr. Yang

Sadowski alleges Dr. Yang violated his Eighth Amendment rights when, on July 22, 2024, he led Sadowski in physical therapy exercises that were too "advanced," given Sadowski's age and frailty. (Compl. at 3.) Plaintiff claims the July 22, 2024 therapy session caused him to suffer "instability, muscle weakness and pain," which ultimately resulted in his accidental fall on August 5, 2024. (*Id.*) Sadowski also alleges Dr. Yang failed to offer him "TENS" therapy. (*Id.* at 5.)

Some courts have found denial or delay of physical therapy, or even a failure to provide sufficient physical therapy, can, under some circumstances, constitute deliberate indifference to serious medical needs. *See, e.g.*, *Morgan v. Halbesein*, No. CV 12–3594–PA (MAN), 2012 WL 5830003, at *11 (C.D. Cal. Nov. 16, 2012) ("Failure to provide physical therapy can be a basis for an Eighth Amendment claim."); *Jackson v. Rallos*, No. 2:09–cv–3234 KJN P, 2012 WL 1037937, at *31 (E.D. Cal. Mar. 27, 2012) ("[T]he failure

to provide plaintiff with 'more aggressive' physical therapy . . . could support a claim of deliberate indifference."). But here, even assuming the therapy exercises Dr. Yang had Sadowski perform on July 22, 2024, were indeed too difficult in light of Sadowski's physical condition, he has alleged no facts to show Dr. Yang "knew" the therapy was inappropriate and nonetheless disregarded an "excessive risk to [Sadowski's] health and safety." *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Toguchi*, 391 F.3d at 1057). As currently pleaded, Plaintiff's claim amounts to, at worst, an isolated act of alleged negligence or lack of due care, which is insufficient show deliberate indifference. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

To the extent Sadowski alleges Dr. Yang's failure to provide him with "TENS" therapy amounted to deliberate indifference, Sadowski provides no facts to show such therapy was appropriate or why a failure to provide it could amount to a "substantial risk of serious harm." *See Toguchi*, 391 F.3d at 1057. Sadowski alleges only that he believes Dr. Yang should have offered it but did not. These conclusory allegations are insufficient to state a plausible claim. *See Colwell*, 763 F.3d at 1066 ("A difference of opinion between a physician and the prisoner . . . concerning what medical care is appropriate does not amount to deliberate indifference."); *see also Iqbal*, 556 U.S. at 678 (holding a plaintiff must provide sufficient "factual basis "to state a claim to relief that is plausible on its face").

For the above reasons, the Court finds Sadowski has failed to state an Eighth Amendment claim against Dr. Yang. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### 2. Dr. Clayton

Sadowski alleges Dr. Clayton acted with deliberate indifference when he failed adequately to treat Sadowski his August 5, 2024 fall. While the Court presumes Sadowski suffered a serious medical need after his fall, Sadowski has failed to allege sufficient facts to show Dr. Clayton acted with deliberate indifference.

   First, it is not clear from the facts alleged when Dr. Clayton became aware of Sadowski's fall, the nature of his injury, or subsequent pain. On August 5, 2025, the day Sadowski fell, he submitted a request for healthcare services in which he explained that he had fallen and requested a wheelchair. (Compl. at 12.) While it appears Dr. Clayton granted this wheelchair request on August 9, 2024, it is not clear Dr. Clayton was subjectively aware of the circumstances of Sadowski's fall or the nature and/or extent of his purported injury. There are no specific facts alleged in the Complaint indicating what Dr. Clayton specifically did (or did not do) that amounted to deliberate indifference.

   Further, the day after Sadowski's fall, he had another physical therapy appointment during which Sadowski informed the therapist of his fall and stated he believed Yang's aggressive therapy from two weeks prior had caused it. But again, it is not clear what *Dr. Clayton* knew during this time. Sadowski alleges Dr. Clayton "cancelled" his upcoming therapy sessions on August 6, 2024, but he alleges no facts to indicate whether the sessions were cancelled was because Dr. Clayton had medically evaluated Sadowski or because the therapist who saw Sadowski on that day noted Sadowski was unhappy with his therapy refused to participate further. (*See* Compl. at 13.) Consequently, as currently pleaded, Sadowski has failed to allege sufficient facts to show Dr. Clayton knew of and disregarded an excessive risk to Sadowski's health after his fall. *Toguchi*, 391 F.3d at 1057.

   Sadowski has also failed plausibly to allege deliberate indifference based on the purported delay in x-raying his hip and diagnosing the hip and pelvis fracture. A delay in treatment may constitute a violation of the Eighth Amendment, but the delay must be harmful. *Wood*, 900 F.2d at 1335. As noted above, it is unclear when Dr. Clayton became aware Sadowski's specific condition after his fall. On August 29, 2024, some three weeks after the fall, Sadowski saw another physical therapist who noted that Sadowski had reported that he was still in pain but feeling better.[6] (*See* Compl. at 16.) But two weeks

---

[6] It was also noted that Sadowski had returned his loaner wheelchair. (Compl. at 15.)

later, Sadowski submitted a series of three requests to medical services (on September 14, September 21, and September 24, 2024) in which he complained of hip pain, asked to see Dr. Clayton, and requested an x-ray or other imaging. (Compl. at 17–19.) Again, however, there are no facts indicating when Dr. Clayton became aware of these requests and what, if anything, he knew of Plaintiff's condition. As such, Plaintiff has not provided sufficient facts plausibly to allege Dr. Clayton acted with deliberate indifference based on a delay in responding to Sadowski's requests to see him about his pain. *See Bodnar v. Cal. Dep't of Corr. & Rehab.*, No. 1:16-cv-01398-SAB (PC), 2017 WL 1650614, at *5 (E.D. Cal. May 2, 2017) (concluding plaintiff who submitted requests for medical services failed to state a claim for deliberate indifference against his primary care doctor when he "failed to allege any facts by which the Court can reasonably infer that [the doctor] was aware that Plaintiff had a serious medical need").

Finally, the Court notes that the day after his October 7, 2024 x-ray, Sadowski met with Dr. Clayton to discuss the results. Sadowski himself describes Dr. Clayton as being "flabbergasted" that the x-ray appeared to show a hip and pelvis fracture, (*see* Compl. at 3), which, if anything, suggests Dr. Clayton had not previously been aware of the extent of Sadowski's injury.[7] *Toguchi*, 391 F.3d at 1057 ("The official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that official "must also draw the inference.").

For these reasons, Sadowski has failed to allege sufficient facts to state an Eighth Amendment claim against Dr. Clayton that is "plausible on its face." *See Iqbal*, 556 U.S. at 678; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

/ / /

/ / /

---

[7] After learning of the fracture, exhibits show Dr. Clayton prescribed Sadowski methadone for pain and ordered he be seen by an orthopedic specialist in the next 48 hours. (Compl. at 22.) It appears the appointment with the specialist was delayed because Sadowski was hospitalized with pneumonia and infectious diarrhea on October 10, 2024, which had to be treated first. (*See id.* at 4, 24.)

### B. California's Bane Act

Sadowski also alleges Drs. Yang and Clayton violated his rights under California's Bane Act. (Compl. at 6.) The Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cnty. of L.A.*, 153 Cal. App. 4th 1230, 1232 (2007)); *see also* Cal Civ. Code § 52.1(a). To state a claim under California's Bane Act, a plaintiff must plausibly allege: "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015) (citing Cal. Civil Code §52.1). A cognizable Bane Act claim requires alleged conduct that is "more egregious" than "mere negligence." *Shoyoye v. Cnty. of L.A.*, 203 Cal. App. 4th 947, 958 (2012).

When a Bane Act claim is based on alleged federal constitutional violations, as here, plaintiffs may rely on the same allegations to prove both that the defendant deprived them of a constitutional right and threatened, intimidated, or coerced them. *Reese*, 888 F.3d. at 1043 ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."). But the claim must also rest on factual allegations that would allow an inference the defendant had a specific intent to violate the plaintiff's rights. *See id.* at 1045; *see also Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th 766, 803–04, as modified (Nov. 17, 2017).

Here, as discussed above, *see supra* Section II.A, Sadowski has failed to state an Eighth Amendment claim against Dr. Yang or Dr. Clayton, and, as such, he has not plausibly alleged a constitutional violation under the Bane Act for the same reasons. *See, e.g.*, *Bernal v. Cnty. of S.D.*, No. 24-CV-1668 W (DEB), 2025 WL 1208921, at *4 (S.D. Cal. Apr. 25, 2025) (finding plaintiff who failed to state an Eighth Amendment claim also failed to state a claim under California's Bane Act); *Cravotta v. Cnty. of Sacramento*, 717 F. Supp. 3d 941, 965 (E.D. Cal. 2024) (concluding plaintiff had failed sufficiently to plead

an Eighth Amendment deliberate indifference claim against a defendant and therefore he failed to plead a Bane Act claim against the same defendant). Accordingly, the Court dismisses Plaintiff's Bane Act claims against Drs. Yang and Clayton for failure to state a plausible claim. *See Iqbal*, 556 U.S. at 678; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### C.  Leave to Amend

Given Plaintiff's pro se status, the Court grants him leave to amend his complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

### APPOINTMENT OF COUNSEL AND PRODUCTION OF EVIDENCE

Plaintiff has filed several motions in which he asks the Court both to appoint counsel and to order Defendants to produce copies of his x-rays. (*See* ECF Nos. 9–11, 13.)

### I.  Requests for Appointment of Counsel

There is no constitutional right to counsel in a civil case. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). In "exceptional circumstances," however, a court may exercise its discretion and "request an attorney to represent any person unable to afford counsel." *Id*. The court must consider both "'the likelihood of success on the merits as well as the ability of the [Plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved.'" *Id.* (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)).

Here, Plaintiff seeks appointment of counsel but does specify any reasons the Court should exercise its limited discretion to do so, beyond his status as a prisoner proceeding pro se and IFP. But such circumstances are common to most prisoners and, without more, are insufficient to establish exceptional circumstances supporting appointment of counsel. *See Palmer*, 560 F.3d at 970; *see also Snowden v. Yule,* No. 2:17-cv-2167 TLN AC P, 2020 WL 2539229, at *1 (E.D. Cal. May 19, 2020). Because Sadowski has not met his burden
///

of demonstrating exceptional circumstances at the present time, the Court **DENIES WITHOUT PREJUDICE** his motions for appointment of counsel (ECF Nos. 9–11, 13).

**II.     Requests for Discovery**

In the same motions, Plaintiff also seeks "discovery" of x-rays of his hip. (*See* ECF Nos. 9–11, 13.) But in cases such as this brought by pro se prisoners, "[d]iscovery may not be pursued in the first instance unless and until the Court first has completed screening, then has directed service upon and a response from the defendants, and finally has issued a scheduling order allowing discovery to commence." *Black v. Nevin*, No. 2:09-cv-02004-KJD-LRL, 2011 WL 13854, at *3 (D. Nev. Jan. 3, 2011). Typically, the "court sets a schedule for discovery once the complaint has been answered." *Walker v. Newsom*, No. 2:20-cv-2243 TLN AC P, 2022 WL 2670328, at *1 (E.D. Cal. July 11, 2022). Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's discovery motions (ECF Nos. 9–11, 13) as premature.

## CONCLUSION

Accordingly, the Court:

1.     **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2);

2.     **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the **$31.20** initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2);

3.     **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov;

4.     **DENIES WITHOUT PREJUDICE** Plaintiff's Motions for Appointment of Counsel and Discovery (ECF Nos. 9–11, 13);

/ / /

5.     **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint in its entirety for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b); and

6.     **GRANTS** Plaintiff <u>sixty (60) days'</u> leave from the date of this Order in which to file a First Amended Complaint that cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived"); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."). *If Plaintiff fails timely to file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and for failure to prosecute in compliance with a court order requiring amendment. See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: December 9, 2025

                              Honorable Todd W. Robinson
                              United States District Judge